SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No.  CR-07-0127-PR |
| Appellee, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division Two |
| | ) | No.  2 CA-CR 05-0272 |
| | ) | |
| GARY EDWARD COX, | ) | Pima County |
| | ) | Superior Court |
| | ) | No.  CR 20043431 |
| Appellant. | ) | |
| _____ | ) | **O P I N I O N** |

Appeal from the Superior Court in Pima County
The Honorable Frank Dawley, Judge Pro Tem

**AFFIRMED**
_____

Opinion of the Court of Appeals, Division Two
214 Ariz. 518, 155 P.3d 357 (2007)

**AFFIRMED**
_____

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                    Tucson
     By   Randall M. Howe, Chief Counsel
          Criminal Appeals Section
          Diane L. Hunt, Assistant Attorney General
Attorneys for State of Arizona

ISABEL G. GARCIA, PIMA COUNTY LEGAL DEFENDER               Tucson
     By   Stephan J. McCaffery, Deputy Legal Defender
Attorneys for Gary Edward Cox
_____

**B E R C H**, Vice Chief Justice

¶1      Gary Edward Cox asks us to review his convictions for
three counts of misconduct involving weapons.  He asserts that

the jury was improperly instructed and that the jury's verdict was not supported by sufficient evidence. We find no error.

## I. FACTS AND PROCEDURAL BACKGROUND

¶2 In the early morning of August 1, 2004, Pima County Deputy Sheriff Jeffrey Bonds pulled over a white Ford Mustang for having an improper registration tag on the license plate. Bonds requested identification from the two occupants of the car: Gary Cox, the driver and registered owner of the car, and Cox's fiancée, Shari Lynn Perko, who sat in the front passenger seat. After obtaining their licenses, Bonds noticed a spent shell casing in the center console and asked if there were any firearms in the car. Cox responded in the negative; Perko remained silent.

¶3 While Deputy Bonds conducted record checks on Cox and Perko, Deputy Elliot Lyle arrived on scene. Lyle asked Perko to step out of the car and, out of Cox's presence, asked Perko whether there were any weapons in the vehicle. Perko initially avoided eye contact with Lyle and did not answer, but after further questioning, she acknowledged that there was a shotgun in the trunk.

¶4 After Lyle informed Bonds about the shotgun, Bonds asked Cox if he had any felony convictions. Cox conceded that he did. Bonds then asked Cox whether there was a shotgun in the trunk and Cox admitted that there was. Cox explained that he

and Perko "had just picked up the gun from [a friend's] house and were taking it back to [Cox and Perko's] residence."

¶5    When Cox opened the trunk, Bonds found an unloaded shotgun and two loaded pistols. Several more shell casings and a live .22 caliber round were found in the center console. Bonds arrested Cox for prohibited possession of a deadly weapon.

¶6    At trial, Perko testified that the guns belonged to her and produced a handwritten bill of sale for each gun. Perko further testified that, on the evening in question, she and Cox had visited her friend, B.P. Cox left the house to play pool with an acquaintance while Perko helped B.P. pack for an imminent move. Because she was moving, B.P. returned to Perko guns she had previously borrowed. During Cox's absence, Perko and B.P. placed various items in Cox's Mustang, including a computer, the shotgun, and some power tools. Perko claimed to have been unaware of the presence of the two pistols.

¶7    Perko maintained that Cox did not know of the firearms in the trunk until she alerted him about the shotgun after Deputy Bonds had stopped the vehicle. Although Perko testified that she told this to Bonds and Lyle, both deputies disputed that assertion in their testimony.

¶8    The jury convicted Cox of three counts of misconduct involving weapons, in violation of Arizona Revised Statutes

("A.R.S.") section 13-3102(A)(4) (2001).[1]  The judge found that Cox had been convicted of two prior felonies[2] and sentenced him to substantially mitigated, concurrent prison terms of six years on each count.

**¶9**      Cox appealed, arguing that the jury's verdict was not supported by sufficient evidence and that the trial court erred by refusing to give a possession instruction based upon *State v. Tyler*, 149 Ariz. 312, 316-17, 718 P.2d 214, 218-19 (App. 1986). The court of appeals affirmed.  *State v.* Cox, 214 Ariz. 518, 523, ¶ 27, 155 P.3d 357, 362 (App. 2007).  We granted review to address the sufficiency of the evidence and to resolve a possible conflict between Division Two's opinion in this case and Division One's opinion in *Tyler*.  We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution, A.R.S. § 13-4033(A)(1) (2004), and Arizona Rule of Criminal Procedure 31.19.

---

[1]    We cite the version of the statute in effect when Cox committed his crimes.  Section 13-3102(A)(4), the section under which Cox was convicted, remains unchanged.

[2]    Although Cox had other convictions, *see State v. Cox*, 214 Ariz. 518, 519, ¶ 1, 155 P.3d 357, 358 (App. 2007) (noting that "Cox had six prior felony convictions"), Cox's sentence was based on only two prior felony convictions:  a 2000 auto theft conviction and a 1987 aggravated DUI conviction.

## II. DISCUSSION

### A. Jury Instructions

¶10 Cox argues that the trial judge erred by refusing to give an instruction suggested by the court in *State v. Tyler*, which requires willful possession or control of a weapon with the intent to use, guide, or manage it. *See* 149 Ariz. at 316-17, 718 P.2d at 218-19.

¶11 The instruction given at trial defined possession using the terminology in A.R.S. § 13-105(30). The judge instructed the jury that "'[p]ossess' means to knowingly exercise dominion or control over property."

¶12 The jury was then instructed as follows on constructive possession and mere presence:

> The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing is in actual possession of it. A person who, although not in actual possession, knowingly exercises the right of control over a thing, either directly or through another person, is then in constructive possession of it.

> The law also recognizes that one person may have possession alone, or that two or more persons jointly may share actual or constructive possession.

> . . . .

> The mere presence of a person at a place where weapons are found is insufficient to establish that the person knowingly possessed or exercised control over the weapons.

¶13 Cox argues that the trial court erred by refusing to

- 5 -

also give the following instruction, based on the one suggested in *Tyler*, 149 Ariz. at 316-17, 718 P.2d at 218-19:

> As for each count of the indictment, the State must prove beyond a reasonable doubt that Mr. Cox did willfully have or keep a deadly weapon in his possession with the intent to control the use and management thereof, or that Mr. Cox did willfully have a deadly weapon in his control with the power and intent to guide or manage such deadly weapon.

The trial court in *Tyler* did not give the similar instruction because it had not been requested. The court of appeals suggested in dicta, however, that such an instruction would be proper in an appropriate case. *Id.* at 316-17, 718 P.2d at 218-19.

¶14    The trial court here similarly refused to give the *Tyler* instruction, reasoning that the proposed instruction "imposes a higher standard" than is required by Arizona's misconduct involving weapons statute. *See* A.R.S. § 13-3102(A)(4).

¶15    We evaluate the trial court's denial of a proposed jury instruction for abuse of discretion, but review de novo whether a jury instruction correctly states the law. *State v. Johnson*, 212 Ariz. 425, 431, ¶ 15, 133 P.3d 735, 741 (2006). This Court views instructions in their entirety when determining whether they correctly reflect the law. *State v. Gallegos*, 178 Ariz. 1, 10, 870 P.2d 1097, 1106 (1994). If a jury would be misled by the instructions when taken as a whole, the trial

court has committed reversible error. *Id.* If, on the other hand, the instructions as a whole are "substantially free from error," the court should affirm the convictions. *See State v. Norgard*, 103 Ariz. 381, 383, 442 P.2d 544, 546 (1968). Applying those standards, we find no error in the superior court judge's refusal to give the *Tyler* instruction.

¶16    The court in *Tyler* formulated its instruction based on *State v. Runnels*, a Kansas Supreme Court case interpreting a Kansas weapons statute. *Runnels*, 456 P.2d 16, 17 (Kan. 1969) (interpreting Kan. Stat. Ann. § 21-2611 (1967)). Unlike Arizona, however, Kansas has not adopted the Model Penal Code. Terminology such as "criminal intent" and mental states such as "purposeful" and "willful" are no longer used in Arizona. Since Arizona's adoption of the Model Penal Code in 1978,[3] Arizona criminal law has recognized only four culpable mental states: intentionally, knowingly, recklessly, and with criminal negligence. *See* A.R.S. § 13-105(9). Although "willfully" is defined similarly to "knowingly," an instruction using "willfully" as the required mental state is needlessly confusing. *See* A.R.S. § 1-215(42) (defining willfully as "aware[ness] or belie[f] that the person's conduct is of that nature or that the circumstance exists").

---

[3]    1977 Ariz. Sess. Laws, ch. 142, § 39.

- 7 -

¶17     More significantly, by requiring that a defendant willfully possess a weapon "with the intent to control the use or management thereof" or with the "intent to guide or manage" the weapon, the proposed instruction adds an element not required by Arizona's prohibited possession statute – willful possession with the intent to manage, guide, or control the firearm.  Such an instruction incorrectly states Arizona law. Courts do not err by refusing to give instructions that misstate the law.  *State v. Axley*, 132 Ariz. 383, 393, 646 P.2d 268, 278 (1982).

¶18     Cox also argues that the jury instructions given in this case were inadequate because they did not define the term "control."  Cox asserts that the *Tyler* instruction, which requires that a defendant have kept a weapon "in his possession with the intent to control the use and management thereof" or that the defendant had "the power and intent to guide or manage such [weapon]," would have provided better guidance.  *Tyler*, 149 Ariz. at 316-17, 718 P.2d at 218-19.

¶19     The instruction Cox requested, however, does not define "control."  It simply uses the term without defining it. Cox offered no other definition, either at trial or on appeal.

¶20     Nor do Arizona's criminal statutes define "control." In the absence of statutory definitions, we give words their ordinary meaning.  A.R.S. § 1-213 (2002) ("Words and phrases

shall be construed according to the common and approved use of the language."); *State v. Riggs*, 189 Ariz. 327, 333, 942 P.2d 1159, 1165 (1997). The word "control" is not a technical term requiring an explanation to the average juror, nor has the legislature given it a peculiar meaning. Because the word "control" has a commonly understood meaning, we cannot say that the trial court abused its discretion in failing to separately define it for the jury.

¶21 Because the *Tyler* instruction employs a mental state not used in Arizona criminal law and requires an element not required by statute, we hold that the trial court did not err by refusing to give the instruction.

## B. Sufficiency of the Evidence

¶22 Cox next objects that the State presented insufficient evidence to support the verdict. We review the sufficiency of evidence presented at trial only to determine whether substantial evidence supports the jury's verdict, "viewing the facts in the light most favorable to sustaining the jury verdict." *State v. Roque*, 213 Ariz. 193, 218, ¶ 93, 141 P.3d 368, 393 (2006). Substantial evidence is evidence that "reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt." *State v. Stroud*, 209 Ariz. 410, 412-13, ¶ 6, 103 P.3d 912, 914-15 (2005) (quoting *State v. Hughes*, 189 Ariz. 62, 73, 938 P.2d 457, 468 (1997)).

"[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

¶23　　　To convict a defendant of violating A.R.S § 13-3102(A)(4), the state must prove that the defendant knowingly "posssess[ed] a deadly weapon . . . if such person is a prohibited possessor." The parties stipulated that Cox, a previously convicted felon, was a prohibited possessor. Cox contested only whether he knowingly possessed the firearms.

¶24　　　The term "possess" is defined by statute as "knowingly to have physical possession or otherwise to exercise dominion or control over property." A.R.S. § 13-105(30). In this case, the State did not claim that Cox physically possessed the weapons. The State argued that Cox constructively possessed the weapons; that is, Cox was aware of the guns in his trunk and had control over them.

¶25　　　At the close of the evidence, Cox moved for a judgment of acquittal under Rule 20 of the Arizona Rules of Criminal Procedure, asserting that the State had not presented substantial evidence that he exercised control over the weapons. Instead, he argued, the evidence merely showed his presence in the vicinity of the guns. The court denied the motion.

¶26     Cox correctly notes on appeal that the State bore the burden of proving beyond a reasonable doubt that he (1) knew that the guns were in the trunk and (2) exercised control over them.  Focusing only on evidence presented by the defense, Cox contends that the State failed to present substantial evidence from which a jury could find that he actually possessed the weapons or that he exercised control over them.  He maintains that his mere presence in a car in which guns are found is insufficient to support a criminal conviction.  *See State v. Miramon*, 27 Ariz. App. 451, 452, 555 P.2d 1139, 1140 (1976) (noting that the defendant's "mere presence" where contraband is found is insufficient to establish knowing possession of the contraband).

¶27     Here, however, the State presented evidence of more than mere presence.  Cox owned and was driving the car containing the guns.[4]  After being stopped, he acknowledged to Deputy Bonds that there was a shotgun in the trunk, indicating knowledge of its presence.  Moreover, several shell casings and a live round were found in the vehicle, further suggesting that the car might contain weapons.  Although the parties presented differing theories as to when Cox became aware of the guns, the

---

[4]     At oral argument, the State urged this Court to adopt a rule that the driver of a vehicle always controls weapons in the vehicle.  We decline to craft so broad a rule as such a conclusion is not necessary to resolve this case.

verdict indicates that the jury found the deputies' testimony regarding the events more credible than Perko's. "No rule is better established than that the credibility of the witnesses and the weight and value to be given to their testimony are questions exclusively for the jury." *State v. Clemons*, 110 Ariz. 555, 556-57, 521 P.2d 987, 988-89 (1974)*; see also State v. Lehr*, 201 Ariz. 509, 517, ¶ 24, 38 P.3d 1172, 1180 (2002).

¶28 Because sufficient evidence was presented from which reasonable jurors could find beyond a reasonable doubt that Cox knowingly controlled the guns, we conclude that the Rule 20 motion was properly denied.

### III.  CONCLUSION

¶29 We hold that the trial court properly instructed the jury and that the State presented sufficient evidence from which reasonable jurors could have found Cox guilty beyond a reasonable doubt. We therefore affirm the judgment of the trial court and the opinion of the court of appeals.

_____
Rebecca White Berch, Vice Chief Justice

CONCURRING:

_____
Ruth V. McGregor, Chief Justice

_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice


_____
W. Scott Bales, Justice