NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DAVID LY NAVARRO, *Appellant*.

No. 1 CA-CR 19-0235
FILED 2-13-2020

Appeal from the Superior Court in Yavapai County
No. P1300CR201800289
The Honorable Christopher L. Kottke, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Zickerman Law Office, PLLC, Flagstaff
By Adam Zickerman
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge David B. Gass joined.

_____

**C R U Z**, Judge:

¶1        David Ly Navarro ("Navarro") appeals his convictions of aggravated driving, alleging insufficient evidence that he was the individual driving the vehicle at the time the violations occurred.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        At approximately 5:30 a.m. on November 13, 2016, E.R. was driving northbound on Interstate 17 in Yavapai County with his wife, his daughter S.R., and S.R.'s boyfriend.  In his rearview mirror, E.R. saw headlights that "kept getting closer and closer," approaching "at a pretty good rate of speed."  As the approaching headlights got "very close," E.R. "saw the headlights swerve behind us and then all of a sudden, all I saw were taillights and dust and the taillights were rolling."  Within "fifteen, twenty seconds," E.R. made a U-turn across the median and drove southbound toward the scene.  Meanwhile, S.R. called 911.  E.R. parked on the shoulder and approached the median, where he saw a "pretty well damaged" pickup truck with a broken windshield and one door "hyperextended backwards wide open."

¶3        As her family's vehicle returned to the scene, S.R. saw the truck's "driver side door was open" and that Navarro was approximately ten feet behind the vehicle.  Navarro told E.R. "don't call the police, I'm okay" and asked E.R. to take him to "the next exit," but E.R. was concerned about Navarro's condition and attempted to stall him until the ambulance could arrive.  E.R. noticed a "pretty predominant" odor of alcohol and that Navarro's speech was slow.  Concerned that Navarro might attempt to flee, S.R. made a second phone call to 911 and told the operator Navarro seemed intoxicated.  As police arrived, Navarro asked E.R. to "tell them you saw someone run away . . . someone else was driving, they ran away."  Navarro then got into the backseat of E.R.'s car briefly, and E.R. asked him to get out of the car because "you are bleeding . . . I'm not taking you anywhere."

When police arrived, E.R. told a responding officer "[h]e's going to try to tell you that there was another driver; I did not see another driver."

¶4        Trooper McCabe of the Arizona Department of Public Safety Highway Patrol Division arrived, briefly walked around the damaged pickup truck, and approached the ambulance where Navarro was seated. Trooper McCabe noticed abrasions on Navarro's hands and, consistent with seatbelt injuries to a driver, bruising "[o]n the left side of his neck just above the collar of his shirt."  After noticing Navarro's speech was "heavy" and his eyes "reddened and watery," Trooper McCabe conducted a horizontal gaze nystagmus and observed six cues "consistent with impairment by alcohol."  Navarro told Trooper McCabe that he had been drinking, so a friend named Jesse was driving the pickup to Camp Verde; Navarro could not, however, provide a last name or phone number for Jesse.  He also told Trooper McCabe that his father owned the pickup.

¶5        Within two hours of the rollover crash, Trooper Hicks conducted a blood draw, which determined that Navarro had a blood-alcohol level of 0.094.  When Trooper Hicks met Navarro at the hospital to conduct the blood draw, Navarro was not wearing a shirt, and Trooper Hicks noticed a "reddish mark" extending from the top of Navarro's left shoulder toward his right hip, ending at about his sternum.

¶6        In February 2018, Navarro was indicted on two counts of aggravated driving, each Class 4 felonies, and one count of criminal damage, a Class 5 felony.  One aggravated driving charge related to driving while under the influence of liquor or drugs while his driving privilege was suspended or revoked; the second aggravated driving charge related to driving or having actual physical control of a vehicle with a blood-alcohol level greater than 0.08.  Following a three-day trial, a jury found Navarro guilty on both aggravated driving counts and found him not guilty on the criminal damage count.  The court sentenced him to three and one-half years on each count and ordered the sentences to run concurrently.

¶7        Navarro timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A).

**DISCUSSION**

¶8        On appeal, Navarro argues that the State did not present sufficient evidence that Navarro was the person driving at the time of the crash. We review the sufficiency of the evidence to support a conviction *de novo.  State v. Meeds*, 244 Ariz. 454, 460, ¶ 9 (App. 2018).

¶9            In reviewing the sufficiency of the evidence presented at trial, we view facts in the light most favorable to sustaining the jury's verdict to determine "whether substantial evidence supports the jury's verdict." *State v. Cox*, 217 Ariz. 353, 357, ¶ 22 (2007). Substantial evidence is evidence— whether direct or circumstantial—that "reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt." *State v. Hughes*, 189 Ariz. 62, 73 (1997); *see Meeds*, 244 Ariz. at 460, ¶ 9. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cox*, 217 Ariz. at 357, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶10           To convict Navarro of the first count of aggravated driving while under the influence of intoxicating liquor, the State had to prove Navarro drove a vehicle while under the influence of alcohol; that he was impaired; that his license or privilege to drive was suspended or revoked at the time he was driving; and that Navarro knew or should have known his license was suspended or revoked. A.R.S. §§ 28-1381, -1383(A)(1). With respect to count two, to convict Navarro the State was required to prove he drove a vehicle while under the influence of alcohol; that he was impaired; and that he had an alcohol concentration of 0.08 or more within two hours of driving or being in actual physical control of the vehicle. A.R.S. § 28-1381(A).

¶11           At trial, Navarro stipulated to the qualifications of the phlebotomist who conducted the blood draw, the accuracy of the results, and their admission into evidence. Navarro's blood-alcohol content was 0.094. The State introduced evidence that notice of suspension of Navarro's driving privilege was mailed to Navarro's residence. On appeal, Navarro challenges a single element of each count. He argues the State failed to prove he was the driver of the pickup truck that rolled over on the morning of the accident.[1]

¶12           At trial, E.R. and S.R. each testified they did not see anyone other than Navarro at the scene of the accident. Trooper McCabe testified that based on how the dust and debris had settled in the pickup's interior, he did "not believe there was a second person" in the vehicle and "[t]he only position that was obviously occupied based on that debris was the driver's seat." Trooper McCabe also testified that he and a second trooper

---

[1]      Navarro does not appeal the findings related to the license suspension element; accordingly, we do not address that element of the conviction.

looked for footprints leading away from the vehicle and could not find anything that indicated someone had run away from the scene. Finally, both Trooper McCabe and Trooper Hicks testified they saw a mark on Navarro's left shoulder consistent with injuries sustained by a driver's side seatbelt. Given this evidence, a rational trier of fact could find beyond a reasonable doubt that Navarro was the driver, and sole occupant, of the pickup truck at the time of the rollover crash.

¶13            At trial and on appeal, Navarro insists that someone named Jesse was driving and that Navarro was asleep until the pickup crashed. At trial the jury weighs the evidence and determines the credibility of witnesses. *State v. Cid*, 181 Ariz. 496, 500 (App. 1995). The jury was free to accept or reject Navarro's testimony and we will not second-guess the jury's credibility determination. *See id.* at 501. Because there is substantial evidence to support the jury's verdict, Navarro is not entitled to reversal of his convictions.

## CONCLUSION

¶14            For the reasons stated, we affirm Navarro's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA